**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTHONY SANSEVERINO,<br>*Plaintiff*,<br>v.<br>DARRIUS CONAWAY, JAKUB MAJEWSKI, and JOHN PRISAVAGE,<br>*Defendants*. | No. 3:24-cv-01672-MPS |

# RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

## I. Introduction

Sanseverino asks me to reconsider my ruling granting the Defendants' motion for summary judgment under Fed. R. Civ. P. 59(e). ECF No. 80. For the reasons set forth below, I DENY the motion.

## II. Factual and Procedural History

I assume familiarity with the factual and procedural history of this case as set forth in my ruling on the motions for summary judgment and incorporate it by reference. ECF No. 78.

## III. Legal Standard

"A court may grant a Rule 59(e) motion only if the movant satisfies the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Hollander v. Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013).

Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d

136, 144 (2d Cir. 1998) (internal quotation marks omitted). "A court should deny [a Rule 59(e)] motion 'where the moving party is solely attempting to relitigate an issue that already has been decided,' and must remain vigilant 'to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Ong v. Chipotle Mexican Grill, Inc*., 329 F.R.D. 43, 50 (S.D.N.Y. 2018), *aff'd sub nom*. *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc*., 970 F.3d 133 (2d Cir. 2020).

## IV. Discussion

Sanseverino's motion sets forth nine arguments in support of the motion in numbered paragraphs. I address them in turn.

### 1. The Controlled Buy Videos

Sanseverino argues that the videos taken by the C.I. during the controlled purchases "clearly show the absence of any narcotics transactions and directly contradict the affidavits and sworn statements of Defendant Conaway." ECF No. 80 ¶ 1. I already addressed this issue and found that "although the videos do not capture the alleged drug transactions, they do not show that such transactions could not have occurred." ECF No. 78 at 23. I also applied the same standard Sanseverino cites. *Compare id.* at 3 n.2 *with* ECF No. 80 ¶ 1. Because Sanseverino's motion seeks to relitigate this issue, I decline to alter my ruling regarding what the videos do (or do not) show.

### 2. The C.I.'s Statement

Sanseverino contends that my "exclusion of the informant's signed and notarized statement is erroneous" because the statement was "properly notarized" and "signed by the C.I.," who he identifies by name. ECF No. ECF No. 80 ¶ 2. In short, Sanseverino argues that I "confus[ed] a public redaction with a failure of proof." *Id.* The C.I.'s statement is reproduced in full below:

Dec. 27, 2021

To whom it may Concern,
I [redacted] Jimenez Jr. do hereby swear that there is no one threatening me in no way shape or form would like it to be known that I did not buy any drugs or Crack Cocaine from Anthony Sanseverino on October 4, and on October 8. I did not buy any drugs from 248 North St Store from Anthony Sanseverino

Born: 12.2.1982
Lives: 80 Clark St. 1st Fl.
New Britain Ct. 06051

[redacted]

Kathleen M We[illegible]

I did not consider this statement as evidence because I found that portions of it were "so blurry" that it was impossible to corroborate that it was notarized. ECF No. 78 at 6. I concluded that the document was "unsigned, unauthenticated, not sworn before a notary, and not made under the penalty of perjury." *Id*. Sanseverino's failure to disclose the identity of the C.I. was not the primary basis for my ruling, and his revelation of the identity now does not make it any more likely that the statement is what Sanseverino claims it is— the informant's signed statement— because the signature on the statement is redacted. Even after reviewing my ruling and filing his motion to reconsider, Sanseverino still has not submitted an unredacted copy of the document, nor has he submitted an affidavit from himself, his lawyer, his lawyer's staff, or anyone else attesting that the document was signed by the C.I. Further, Sanseverino has not sought to reopen the summary judgment record in light of my ruling to enable him to procure and submit an affidavit from the C.I. that cures the deficiencies I identified in my ruling.

Further, Sanseverino's motion does not even address the illegibility of the blurry lines he apparently believes evidence a notary's stamp. As I indicated in the ruling, there is insufficient evidence that the statement was, in fact, notarized because the four lines in the bottom right-hand corner of the document are too blurry to discern whether those lines are a notary's notation, and Sanseverino offered no other evidence to corroborate that the document was notarized. ECF No. 78 at 5. His unadorned assertion now that the statement was "properly notarized" seeks to relitigate this issue with no new evidence or argument. He has not submitted with his motion any evidence that would corroborate that the statement was notarized, and he does not point to any such evidence in the existing record. Nor does he seek to reopen the summary judgment record, for example, to submit to chambers the original document bearing a raised notary's stamp, to submit an affidavit from the notary who purportedly notarized the statement, or to submit an affidavit from any of his

attorney's staff who might have been involved in procuring the statement. If the document was in fact notarized, it should have been relatively simple to demonstrate that to the Court. Sanseverino's motion does not even attempt to do so.

In sum, because Sanseverino has not pointed to the availability of any new evidence or demonstrated the need to correct a clear error, I decline to alter my ruling.

### 3. The Photograph of the Bag of Crack Cocaine

Sanseverino's next argument concerns the bag of crack cocaine that the officers found during the search of the Mini Mart. He argues that when Officer Kiely found the crack cocaine, "instead of photographing it where it was 'originally' found, the officers moved the surrounding objects (i.e., the milk crate filled with multiple bottles) from a darkened crevice between a milk crate and mini fridge, to photograph the alleged crack *as if* it were on the floor 'in plain sight,' visible to the naked eye, creating the false impression that it was there for the world to see." ECF No. 80 ¶ 3. This argument re-plows ground first tilled in Sanseverino's summary judgment papers and is no more convincing now. To the contrary, that the crack cocaine was found in a "darkened crevice" and not "in plain sight" only bolsters my conclusion that it was reasonable for the officers to believe that Sanseverino, as the owner and operator of the Mini Mart, had constructive possession of the crack cocaine because it was found in an area of the store not readily accessible to customers. *See* ECF No. 78 at 19-20 ("The body camera footage shows that the bag of cocaine was found by Detective Kiely during the search of the Mini Mart, which Sanseverino owned and operated, when Detective Kiely removed a crate from behind a door next to the cashier area and retrieved a small bag containing a white substance. The bag of cocaine was found near the cash register area, in the back of the store. The area behind the door was dark and appeared to be for storage; it does not appear to have been an area customers would have visited or that was even

visible to them." (internal citations and quotation marks omitted)). Sanseverino's argument here is also contradicted by the video footage of the search of the Mini Mart, which shows that the officers photographed the bag of crack cocaine in the same place they found it. *Id.* at 11 ("The footage shows that Kiely returned the bag to its original location after initially picking it up, and Majewski photographed it in this location." (citing Kiely and Majewski's body camera footage)). His remaining arguments seek to relitigate the issue of constructive possession. I decline to alter my ruling.

**4. Collective Knowledge Doctrine**

Sanseverino also argues that my ruling "ignores the application of the collective knowledge doctrine" and that "[t]he defendants cannot rely on the collective knowledge doctrine" to "generate probable cause out of thin air." ECF No. 80 ¶ 4. My ruling does not mention this doctrine, *see* ECF No. 78, but if I had relied on it to support my finding that there was probable cause for Sanseverino's arrests and the search of the Mini Mart, *id.* at 19-21, 30-33, it would have been proper to do so. *See Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'" (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983))).

**5. The C.I.'s Criminal History**

Next, Sanseverino argues that the C.I. is an unreliable informant because the "extensive nature of [his] criminal history includes acts of dishonesty, violence, and defiance of court authority." ECF No. 80 ¶ 5. The C.I.'s nine felony convictions consist of: Burglary 2, ECF No. 61-6 at 9; Carrying a Pistol without a Permit, *id.*; Robbery 1, *id.* at 10; Possession of Narcotics, *id.*

at 11; Escape 1, *id.* at 12; Assault Personnel, *id.*; and three convictions for Violation of Restraining Order, *id.* at 13, 14. In my ruling, I found that none of the C.I.'s felony convictions were crimes of "dishonesty or false statements" that "bear on credibility" under *United States v. Estrada*, 430 F.3d 606, 614, 616 (2d Cir. 2005). ECF No. 78 at 27 n. 13. And none of the C.I.'s misdemeanor and "unspecified" convictions were crimes of dishonesty either. ECF No. 61-6 (C.I.'s misdemeanor and unspecified convictions consist of: Failure to Appear Second Degree, *id.* at 6, 8; Engaging Police in Pursuit, *id.* at 7; Probation Violation, *id.* at 8, 10, 11, 13; and Reckless Driving, *id.* at 8). Sanseverino made this same argument in his motion for summary judgment, *compare* ECF No. 80 ¶ 5 *with* ECF No. 60-1 at 10, and neither here nor there offers any reason why a conviction for a crime involving violence or "defiance of court authority" bears on the C.I.'s reliability. The remainder of Sanseverino's arguments in this section consist of points he already made (and I rejected) at the summary judgment stage.

**6. The Search of the C.I.**

Sanseverino argues that I erroneously "accept[ed] Conaway's claim that he conducted a 'search' of" the C.I. before the controlled purchases "when he only performed a minimal and superficial 'pat down,' – which is not a search under the law and would not reasonably lead to discovery of preexisting drugs secreted on his person." ECF No. 80 ¶ 6. As an initial matter, Sanseverino misstates *Terry v. Ohio*, 392 U.S. 1 (1968) when he cites that case for the proposition that a "pat down" "is not a search under the law." ECF No. 80 ¶ 6. The Supreme Court in *Terry* explicitly concluded otherwise. *Terry*, 392 U.S. at 19 ("In this case there can be no question, then, that Officer McFadden 'seized' petitioner and subjected him to a 'search' when he took hold of him and patted down the outer surfaces of his clothing."). And in my ruling, I did not find that Conaway "only performed a minimal and superficial 'pat down.'" ECF No. 80 ¶ 6. I found that

the affidavits' statement that the C.I. was "searched for money and/or contraband" was a truthful statement "in light of the uncontested fact that the C.I. was, *at the very least*, 'patted down,'" ECF No. 78 at 28 (emphasis added), based on the Local Rule 56(a)(2) Statement wherein Sanseverino claimed that the C.I. was "solely patted down," and the Defendants cited evidence that Conaway's "searches included a 'check of his pockets, anywhere he would possibly be able to store contraband.'" ECF No. 68-1 ¶ 65 (quoting Conaway's deposition transcript). Further, because Sanseverino offered no evidence to rebut Conaway's testimony that the search of the C.I. consisted of checking his pockets and other storage locations, the summary judgment record in this case showed more than just a "pat down." I decline to alter my ruling regarding the search of the C.I.

### 7. Corrected Affidavit Doctrine and Exculpatory Evidence

Next, Sanseverino argues:

> The court also failed to address the recent holding and analysis in *K.W. v. City of New York*: "[B]y omitting the exculpatory information in the arrest warrant affidavit, [the officers] deprived the judge of the fair ability to make the necessary assessment of whether the 'story holds water' for probable cause purposes." Courts view omissions "as a whole in determining if probable cause continues to exist," even if "one-by-one," the omissions appear to be immaterial. *K.W. v. City of New York*, 177 F.4th 127, 146-47 (2d Cir. 2026) (internal citations omitted). As a whole, no probable cause existed for any of these warrants.

ECF No. 80 ¶ 7. But the first quotation from *K.W.* was neither the court's holding nor its analysis. The quotation was lifted from inside a parenthetical of a "see also" citation. *K.W.*, 177 F.4th at 146. And in my analysis applying the corrected affidavit doctrine, I included what Sanseverino would call "exculpatory information" and considered the omissions as a whole. ECF No. 78 at 28-29 ("In sum, the corrected affidavit would include that (1) the videos did not capture any drug transactions . . . The corrected affidavits would read, in relevant part, as follows . . . [the video] did not show whether a drug transaction occurred"); *id.* at 29-30 (corrected affidavit with all the corrections); *id.* at 31 ("Under all these facts and circumstances . . . a reasonable officer would

believe that Sanseverino had committed the crimes of Possession of Narcotics and Sale of Narcotics."). Sanseverino's argument that no probable cause existed for the warrants seeks to relitigate that issue. I decline to amend my ruling.

**8. Connecticut Police Accountability Act**

Sanseverino also contends that I failed to address his claims under the Police Accountability Act. ECF No. 80 ¶ 8. As explained in my ruling, I declined to exercise supplemental over this claim and dismissed it without prejudice because I had dismissed all claims arising under federal law. ECF No. 78 at 40. *See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182–83 (2d Cir. 2004) ("The exercise of supplemental jurisdiction is left to the discretion of the district court . . . If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (internal quotation marks omitted; alterations adopted). Sanseverino remains free to assert this claim in state court. In any event, his motion offers no reason to reconsider my ruling, and I decline to do so.

**9. Damage to the Mini Mart**

Lastly, Sanseverino argues that I erroneously determined that the search of the Mini Mart was reasonable and not unnecessarily destructive by relying on the monetary value of the damaged property. ECF No. 80 ¶ 9. But I did not rely solely on the monetary value of the damaged items. I applied the same standard Sanseverino invokes, *compare id. with* ECF No. 78 at 33, and found that the two photographs of the "tossed merchandise" in "the area behind the counter in the Mini Mart" were "consistent with a lawful search for drugs in that area, rather than any unreasonable or malicious conduct, and no reasonable jury could conclude otherwise" because it was "plainly reasonable for officers to search thoroughly the area behind the counter in the Mini Mart . . . given that the affidavit in support of the search warrant indicated that the C.I. had purchased cocaine

from the 'white male who works at the store, behind the counter / cash register'" and the damage, which Sanseverino claimed amounted to $900, consisted only of damage to shelving units and tossed boxes of tobacco products and confectionary items behind the counter. ECF No. 78 at 34. Because Sanseverino's motion seeks to relitigate this issue, I decline to alter my ruling.

## V. Conclusion

For the reasons set forth above, the motion to reconsider is DENIED.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Hartford, Connecticut

September 30, 2026